Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/03/2019 09:08 AM CDT

- 618 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

Juan Martinez, appellee, v. CMR Construction
& Roofing of Texas, LLC, defendant and
third-party plaintiff, appellant, and
Rene Menjivar and Texas Mutual
Insurance Company, third-party
defendants, appellees.

___ N.W.2d ___

Filed March 22, 2019.    No. S-18-419.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.

3. ____: ____. Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous.

4. **Workers' Compensation.** As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony.

5. **Workers' Compensation: Liability.** When a contractor fails to require a subcontractor to carry workers' compensation insurance and an employee of the latter sustains a job-related injury, the contractor is a statutory employer and, with the immediate employer subcontractor, is jointly and severally liable to pay compensation under the terms of the Nebraska Workers' Compensation Act.

6. **Workers' Compensation.** When determining a loss of earning capacity for an injured worker, the four factors to consider under Neb. Rev. Stat. § 48-121 (Reissue 2010) are the worker's (1) eligibility to procure

- 619 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

employment generally, (2) ability to earn wages, (3) ability to hold a job obtained, and (4) capacity to perform the work in the job in which the worker is engaged.

7. **Workers' Compensation: Words and Phrases.** A worker who, solely because of his or her injury, is unable to perform substantial amounts of labor, either in his or her particular line of work, or in any other for which he or she would be fitted except for the injury, is totally disabled within the meaning of the workers' compensation law.

8. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.

9. **Workers' Compensation: Final Orders.** A workers' compensation case is a special proceeding.

10. **Final Orders: Appeal and Error.** A substantial right is an essential legal right, not a mere technical right. A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken.

11. **Final Orders.** It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.

12. **Final Orders: Appeal and Error.** A substantial right under Neb. Rev. Stat. § 25-1902 (Reissue 2016) is not affected when that right can be effectively vindicated in an appeal from the final judgment.

13. **Jurisdiction: States.** Specific personal jurisdiction requires that the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

14. ____: ____. To exercise specific jurisdiction, the plaintiff's cause of action must arise out of, or be related to, the defendant's contacts with Nebraska.

15. ____: ____. In order to give rise to specific personal jurisdiction, the defendant's conduct and connection with the forum state must be such that he or she should reasonably anticipate being haled into court there.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed.

Benjamin E. Maxell, of Govier, Katskee, Suing & Maxell, P.C., L.L.O., for appellant.

- 620 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

James R. Walz for appellee Juan Martinez.

Jason W. Grams and Stacy L. Morris, of Lamson, Dugan & Murray, L.L.P., for appellee Texas Mutual Insurance Company.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

The Nebraska Workers' Compensation Court concluded that CMR Construction & Roofing of Texas, LLC (CMR), was a statutory employer under Neb. Rev. Stat. § 48-116 (Reissue 2010) of the Nebraska Workers' Compensation Act,[1] thus requiring it to compensate Juan Martinez for injuries sustained while acting as an employee of Rene Menjivar, a CMR subcontractor.

CMR challenges the compensation court's determination under § 48-116 of what constitutes the term "employer" and alleges the compensation court lacked personal jurisdiction over Texas Mutual Insurance Company (Texas Mutual), a workers' compensation insurance company domiciled and having its principal place of business in Texas. CMR also challenges the compensation court's findings regarding earning capacity, attorney fees, and entitlement to future medical care. We affirm.

## BACKGROUND

CMR is engaged in the repair and replacement of the roofs of single family dwellings anywhere in the continental United States, corresponding to the aftermath of severe weather conditions. In 2014, CMR engaged Menjivar as a subcontractor and at that time, required Menjivar to produce workers' compensation insurance, which CMR verified. CMR further required Menjivar to add CMR to its workers' compensation policy and produce a certificate that demonstrated CMR would be notified

---

[1] Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2010 & Cum. Supp. 2014).

by Menjivar's insurance carrier, Texas Mutual, before the cancellation or expiration of the policy.

CMR agreed to repair a residential roof in Omaha, Nebraska. CMR subsequently assigned the roofing project to Menjivar. On March 12, 2015, Martinez, employed by Menjivar, was working on the roof when he fell two stories and suffered significant injuries to his back, hip, and legs. Martinez was treated at various medical facilities in Omaha.

On December 11, 2015, Martinez initiated an action in the compensation court to recover for his injuries. Martinez moved for summary judgment, and in the course of litigating that motion, Martinez and CMR agreed that Menjivar previously possessed valid workers' compensation insurance through Texas Mutual, but that the policy of insurance was canceled on December 16, 2014, due to nonpayment.

On August 17, 2016, following a motion for summary judgment, the compensation court found that CMR was the statutory employer of Martinez. The court specifically noted in response to Martinez' third set of requests for admissions, that CMR admitted it had "created or carried into operation a 'scheme, artifice, or device' as contemplated by Neb. Rev. Stat. §48-116" to avoid employer liability. On September 6, CMR sought an interlocutory appeal seeking to reverse the employer determination, which on October 27, in case No. A-16-857, was summarily dismissed by the Nebraska Court of Appeals.

During the course of the workers' compensation proceedings, Texas Mutual sought to be dismissed from the suit on the basis that the court lacked personal jurisdiction over it. CMR offered the affidavit of its attorney in opposition to the motion to dismiss filed by Texas Mutual. That affidavit contained the policy of insurance between Menjivar and Texas Mutual, with CMR added as an additional insured. The policy of insurance shows that Texas Mutual's company office is in Austin, Texas, and further that Texas Mutual issued the policy to CMR, whose office was in Haltom City, Texas.

Evidence in the record demonstrates that Texas Mutual is a creation of the Texas Legislature as an insurer of last resort and does not provide insurance or do business in the State of Nebraska. The record further demonstrates that in item 3(A) of the policy procured in this case, Texas is the only state in which benefits of the workers' compensation insurance applies. The court found that the evidence offered by CMR failed to establish a prima facie case of personal jurisdiction.

Martinez also opposed Texas Mutual's motion to dismiss and offered exhibit 35, a workers' compensation insurance policy between Menjivar and Texas Mutual. Exhibit 35 showed that a policy of workers' compensation insurance was issued to Menjivar at an address in Houston, Texas. Texas Mutual's address was noted to be in Austin. The court again found that this exhibit did nothing to show the existence of any contacts between Texas Mutual and Nebraska.

The court noted that Texas Mutual had initiated a declaratory action in the State of Texas, asking a Texas court to determine whether the policy of workers' compensation insurance issued by Texas Mutual afforded coverage for the injuries suffered by Martinez. The compensation court ultimately found that Texas was the proper forum to decide a dispute between two Texas companies involving a policy of workers' compensation insurance that was issued in Texas, and it therefore granted Texas Mutual's motion to dismiss. On September 20, 2017, CMR filed a second interlocutory appeal with the Court of Appeals, seeking review of the trial court's finding that it lacked personal jurisdiction over Texas Mutual. On October 27, in case No. A-17-1020, the Court of Appeals dismissed the appeal without opinion.

On January 12, 2017, the compensation court held a hearing on Martinez' second motion for partial summary judgment, in which Martinez sought a finding and award of, among other things, attorney fees. On February 10, the compensation court entered partial summary judgment in favor of Martinez, finding that Martinez was entitled to "a reasonable attorney's fee

- 623 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

pursuant to Neb. Rev. Stat. § 48-125 for [CMR's] failure to pay the medical bill from [a medical center in Omaha] within thirty days of its receipt."

On February 13, 2018, the compensation court held a trial in this case. The court issued its award on March 23. During trial, the court resolved the outstanding issues of the nature and extent of the injuries Martinez suffered on March 12, 2015, the extent of Martinez' entitlement to temporary and permanent disability benefits, CMR's liability for medical bills incurred by Martinez, and Martinez' entitlement to an award of future medical care.

The court found that Martinez was entitled to temporary total disability benefits for the 3 months he was off work after the accident. The court relied on the opinion of the physician who treated Martinez' femur fracture, as well as the testimony of Martinez, to find that Martinez was temporarily totally disabled from and including March 12 through and including June 12, 2015, a period of 13.2857 weeks. The court found that Martinez was entitled to temporary total disability benefits at the weekly rate of $761, which was the maximum rate for injuries in 2015.

Finding insufficient evidence, the compensation court declined to award Martinez temporary partial disability benefits. The court found that Martinez had reached maximum medical improvement from all of his injuries on October 12, 2016. Relying on the testimony of Dr. Sunil Bansal, a physician who examined Martinez, the court further found that Martinez suffered permanent impairment to his whole body due to his neck, head, and back injuries.

Having considered all of the evidence, including the opinion of the agreed-upon vocational rehabilitation counselor, the court found that Martinez had suffered an 80-percent loss of earning capacity. Based upon that factual finding, the court found that Martinez was entitled to permanent partial disability benefits at the weekly rate of $613.34, starting June 13, 2015, and continuing for 286.7143 weeks.

- 624 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

CMR was ordered to pay a total of $52,980.58 in medical and physical therapy expenses. The court further found that Martinez was entitled to an award of future medical care for his neck injury only.

## ASSIGNMENTS OF ERROR

CMR assigns, consolidated and restated, that the compensation court erred in (1) finding that CMR was the statutory employer of Martinez and that therefore CMR was liable for the payment of any awarded indemnity, medical, or other benefit to Martinez; (2) awarding Martinez an excessive loss of earning capacity; (3) finding that CMR was liable for the payment of attorney fees to Martinez for unpaid medical bills related to Martinez' injuries; (4) finding that Martinez is entitled to future medical care; and (5) finding that the court lacked personal jurisdiction over Texas Mutual.

## STANDARD OF REVIEW

[1] A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award.[2]

[2,3] An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[3] Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous.[4]

---

[2] See *Buckingham v. Creighton University*, 248 Neb. 821, 539 N.W.2d 646 (1995). See, also, § 48-185.

[3] *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995).

[4] *Id.*

[4] As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony.[5]

## V. ANALYSIS

*CMR's Liability for
Martinez' Injuries.*

CMR assigns that it was not liable for Martinez' injuries. CMR argues that it is not a statutory employer under § 48-116, because it had taken all requisite steps to ensure that Menjivar, its subcontractor, had proper workers' compensation coverage for its employees and therefore was excluded from the status of a statutory employer under § 48-116.

The Nebraska Workers' Compensation Act applies to every nonresident employer performing work in the state who employs one or more employees in the regular trade, business, profession, or vocation of such employer.[6] Workers' compensation coverage must be obtained from an insurance company licensed to provide workers' compensation coverage in Nebraska, unless the employer is authorized to self-insure workers' compensation liability under Nebraska law.[7] The record contains no cooperative agreements showing Nebraska was required to honor any workers' compensation coverage provided by state funds in other states.

In Nebraska, principal employers can be held jointly and severally liable with the immediate employer for uninsured injuries to the immediate employer's workers.[8] Section 48-116 provides:

> Any person, firm, or corporation creating or carrying into operation any scheme, artifice, or device to enable him or her, them, or it to execute work without being

---

[5] *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

[6] § 48-106(1).

[7] § 48-106(6).

[8] See § 48-116.

responsible to the workers for the provisions of the Nebraska Workers' Compensation Act shall be included in the term employer, and with the immediate employer shall be jointly and severally liable to pay the compensation herein provided for and be subject to all the provisions of such act. This section, however, shall not be construed as applying to . . . a contractor, who, in good faith, lets to a subcontractor a portion of his or her contract, if the owner or principal contractor, as the case may be, requires the contractor or subcontractor, respectively, to procure a policy or policies of insurance from an insurance company licensed to write such insurance in this state . . . .

The purpose of statutes such as § 48-116 is to protect employees of "irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, which has it within its power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers."[9] Another important reason for statutes like § 48-116 is to prevent evasion of compensation coverage by the subcontracting of the employer's normal work.[10]

[5] When a contractor fails to require a subcontractor to carry workers' compensation insurance and an employee of the latter sustains a job-related injury, the contractor is a statutory employer and, with the immediate employer subcontractor, is jointly and severally liable to pay compensation under the terms of the Nebraska Workers' Compensation Act.[11]

CMR argues that it does not qualify as a statutory employer, because it required its subcontractor, Menjivar, to obtain workers' compensation insurance. In support of this argument, CMR

---

[9] 6 Arthur Larson et al., Larson's Workers' Compensation Law § 70.04 at 70-6 (2017).

[10] See *id.*

[11] See *Rogers v. Hansen*, 211 Neb. 132, 317 N.W.2d 905 (1982).

- 627 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

offered various affidavits, including that of both its comptroller and its general manager, showing that it required Menjivar to present valid workers' compensation insurance. Although CMR's comptroller verified that Menjivar had workers' compensation insurance in July 2014, the record lacks any indication that he checked the status of the policy immediately before commencing the roofing project in March 2015.

CMR did require that it be added as an additional insured on the Menjivar policy and that in the event the insurance policy was canceled before the expiration date of the policy, the insurance company, Texas Mutual, would provide notice to CMR. CMR's general manager indicated that it is a normal business practice of CMR to list the subcontractor's insurance policy expiration date next to its name on a project board. He noted that he and CMR's comptroller reviewed the subcontractor's listed insurance expiration date prior to allowing the subcontractor to begin work on the project. CMR contends that these steps are designed to require a subcontractor to carry workers' compensation insurance.

In arguing that it was exempt under § 48-116, CMR relies on the fact that it took the above-listed steps to require Menjivar to provide insurance. CMR contends that beyond merely incorporating the requirement into a contractual provision in the subcontractor agreement, an issue that we addressed in *Hiestand v. Ristau*,[12] CMR took the additional steps of verifying that a policy had been obtained, recording the expiration date of the policy, and requiring that CMR be added as an additional insured.

CMR's argument fails for three reasons. First, it is undisputed that CMR, in response to a request for admission from Martinez in regard to this action, affirmatively admitted that it had "created or carried into operation a 'scheme, artifice, or device' as contemplated by Neb. Rev. Stat. §48-116" to evade workers' compensation coverage requirements. This admission

---

[12] *Hiestand v. Ristau*, 135 Neb. 881, 284 N.W. 756 (1939).

- 628 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

was noted by the compensation court, and under court rules, the result in this case cannot be avoided. Under Neb. Ct. R. Disc. § 6-336(b), "[a]ny matter admitted under this rule is conclusively established . . . ." Therefore, we must treat CMR's admission that it "created or carried into operation a 'scheme, artifice, or device' as contemplated by Neb. Rev. Stat. §48-116" as conclusively established.

Second, even if we were to disregard such an admission, it is clear from the record that CMR is Martinez' statutory employer. The record demonstrates that CMR engaged in a contractual relationship by agreeing to the roof repair project. Had CMR completed the work itself, it would have been required to provide workers' compensation insurance under the Nebraska Workers' Compensation Act. However, CMR subcontracted the roof project to Menjivar, a subcontractor with whom CMR had an established relationship.

The record indicates that CMR confirmed Menjivar had workers' compensation insurance in July 2014 and that it made an attempt to ensure that it would be made aware of the cancellation of such insurance. But the record also indicates that Menjivar's policy with Texas Mutual was nevertheless canceled without notice being provided to CMR and that CMR did not verify the status of the policy before beginning the work in March 2015. Hence, CMR failed to meet its § 48-116 obligations.

Third, the record shows that Texas Mutual was never authorized by the the compensation court, pursuant to § 48-146, to issue insurance for workers' compensation purposes in Nebraska. As Texas Mutual contended, the record shows that the Texas Mutual policy provided coverage for workers' compensation benefits for individuals injured only in the State of Texas. Further, the certificate provided by Texas Mutual specifically denoted the word "NONE" under the section identifying states where the coverage would extend.

According to the affidavit of the senior manager of corporate underwriting at Texas Mutual, Texas Mutual is not

- 629 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

authorized to provide workers' compensation insurance in any jurisdiction other than Texas. Further, the policy specifically states that "[t]his policy does not provide 'other states' insurance coverage."

Even if Menjivar had not allowed his insurance with Texas Mutual to be canceled, under Nebraska law, Menjivar—and in turn CMR—would still have been jointly and severally liable for compensating injured employees, because Menjivar was executing work without being responsible to the workers for the provisions of the Nebraska Workers' Compensation Act. Specifically, under the workers' compensation statutes, Menjivar was engaging in covered work that required the insurer to be authorized to transact the business of workers' compensation insurance in this state.[13] The failure of CMR to follow the laws of this state with regard to workers' compensation means that CMR fell well short of requiring its subcontractor to carry valid workers' compensation insurance.

The decision of the compensation court finding that CMR was the statutory employer of Martinez is correct. As the statutory employer, CMR is subject to all the provisions of the Nebraska Workers' Compensation Act with regard to Martinez' March 12, 2015, work accident, and is jointly and severally liable to pay the compensation provided for thereunder.

*CMR's Claim of Excessive*
*Earning Capacity.*

CMR next assigns that the court erred in the amount of its award for loss of earning capacity. CMR grounds this argument on the fact that because Martinez "worked in similar, albeit lighter, jobs and earned equal or similar wages," he does not qualify as being 80 percent disabled.[14]

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that

---

[13] See § 48-146.

[14] Brief for appellant at 23.

- 630 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

(1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award.[15]

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[16] However, findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous.[17]

[6] We held in *Sidel v. Travelers Ins. Co.*[18] that when determining a loss of earning capacity for an injured worker, the four factors to consider under § 48-121 are the worker's (1) eligibility to procure employment generally, (2) ability to earn wages, (3) ability to hold a job obtained, and (4) capacity to perform the work in the job in which the worker is engaged.

Having found that Martinez had reached maximum medical improvement, the court assessed Martinez' permanent disability. The court found that neck, head, and back injuries like those suffered by Martinez in this case were injuries to the body as a whole under § 48-121(2) and (3). For permanent partial disability purposes, injuries to the body as a whole are compensated based upon a loss of earning capacity.[19] The court noted that evidence of permanent impairment or permanent physical restrictions was sufficient to establish a permanent medical impairment for purposes of determining loss of earning capacity.

Bansal, Martinez' medical expert, opined that Martinez had both permanent impairment and permanent restrictions. The

---

[15] *Buckingham v. Creighton University, supra* note 2. See, also, § 48-185.

[16] *Hull v. Aetna Ins. Co., supra* note 3.

[17] *Id.*

[18] See *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980).

[19] *Snyder v. IBP, inc.*, 235 Neb. 319, 455 N.W.2d 157 (1990).

court noted that Martinez underwent a functional capacity evaluation documenting that he could work only in the light demand category. A physician hired by CMR to conduct a review of Martinez' medical records opined that Martinez did not suffer permanent impairment and that he required no work restrictions for his whole body injuries. The court noted that CMR's expert found Martinez had suffered a l5-percent impairment to his left leg as a result of his left leg fractures. But the court then found, based on Bansal's opinion, that Martinez suffered permanent impairment to his whole body due to his neck, head, and back injuries.

The court noted that the vocational rehabilitation counselor found Martinez was 100 percent disabled. However, it conducted a thorough analysis of the factual circumstances and applied the four factors of *Sidel* noted above to determine that Martinez was only 80 percent disabled. The court then noted that Martinez continued to work as a roofer, did many of the job duties of a roofer, and was paid basically the same wages he earned at the time of his injury. Based upon these facts, the court found that Martinez can and does work as a roofer, which is his only past form of employment. The court noted that there were certainly jobs that Martinez could no longer perform and accordingly determined that Martinez was 80 percent disabled.

[7] We have previously noted that a worker who, solely because of his or her injury, is unable to perform substantial amounts of labor, either in his or her particular line of work, or in any other for which he or she would be fitted except for the injury, is totally disabled within the meaning of the workers' compensation law.[20] Here, Martinez is working in the same field as when he was injured; however, he is now limited in his ability to perform tasks, which CMR readily admitted at oral argument by stating that Martinez performs "albeit lighter [work]."

---

[20] *Craig v. American Community Stores Corp.*, 205 Neb. 286, 287 N.W.2d 426 (1980).

We hold that the compensation court's findings of fact were not clearly erroneous and that its ultimate conclusions of law were supported by competent evidence. Therefore, CMR's second assignment of error is without merit.

*Award of Attorney Fees.*

CMR assigns that the compensation court erred in awarding Martinez attorney fees. CMR claims that there was a reasonable controversy with regard to CMR's status as a statutory employer, CMR's liability, and the court's determination that Martinez suffered an 80-percent loss of earning capacity and that the award of fees was therefore erroneous. Meanwhile, Martinez argues that we lack jurisdiction to address this issue; he contends that the compensation court's February 10, 2017, order regarding the second motion for partial summary judgment and attorney fees was a final and appealable order, because a benefit in the form of the fees had been conferred and CMR failed to appeal from that benefit.

Martinez' assertion regarding this court's jurisdiction is rooted in our decision in *Jacobitz v. Aurora Co-op.*[21] In *Jacobitz*, we held that a compensation court's finding of a compensable injury, or its rejection of an affirmative defense without a determination of benefits, was not an appealable order that affected an employer's substantial right in a special proceeding.

Martinez argues that under *Jacobitz*, the trial court's award of attorney fees conferred a benefit affecting a substantial right for CMR and was therefore a final appealable order from which CMR failed to appeal at the time it appealed from the February 10, 2017, order for partial summary judgment. The Court of Appeals dismissed CMR's second appeal on October 26, 2017, noting that it lacked jurisdiction.

[8] CMR could have appealed from the award of attorney fees at the time the fees were ordered only if the order awarding fees was final. Under Neb. Rev. Stat. § 25-1902 (Reissue

---

[21] *Jacobitz v. Aurora Co-op*, 287 Neb. 97, 841 N.W.2d 377 (2013).

- 633 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

2016), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.

[9] The requests for fees and the orders granting such fees in this case were made pursuant to § 48-125, which is contained within the workers' compensation statutes. It is well settled that a workers' compensation case is a "special proceeding."[22] Accordingly, we examine the February 10, 2017, order granting Martinez' request for attorney fees to determine if such order affected a substantial right made in this special proceeding.

[10-12] We have held:

> "A substantial right is an essential legal right, not a mere technical right. . . . A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken."[23]

Moreover, it is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[24] And a substantial right under § 25-1902 is not affected when that right can be effectively vindicated in an appeal from the final judgment.[25] There is nothing here to suggest that the award of attorney fees cannot be effectively vindicated on appeal to this court.

---

[22] *Thompson v. Kiewit Constr. Co.*, 258 Neb. 323, 329, 603 N.W.2d 368, 372 (1999).

[23] *Id.*

[24] *In re Estate of Abbott-Ochsner*, 299 Neb. 596, 910 N.W.2d 504 (2018).

[25] *Id.*

- 634 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

In this case, the award of attorney fees does not affect the subject matter of the litigation. Nor can it be said that the award of attorney fees affected the substantive rights of the parties. Rather, the attorney fees are closer to rules that regulate the conduct of employers or affect the remedy available.[26] We conclude that the order granting fees was not final at the time it was issued.

Having established that CMR could not have raised this issue in its interlocutory appeal to the Court of Appeals, we find that we have jurisdiction over this matter and turn to the compensation court's award of attorney fees. With regard to attorney fees, a judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award.[27]

Section 48-125 provides:

> Whenever the employer refuses payment of compensation or medical payments . . . for thirty days after injury or neglects to pay medical payments . . . after thirty days' notice has been given of the obligation for medical payments, and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award.

We note that a statutory attorney fee provision is designed to encourage private action to vindicate the rights granted by

---

[26] See *Midwest Grain Products v. Productization*, 228 F.3d 784 (7th Cir. 2000). See, also, *Furstenfeld v. Pepin*, 23 Neb. App. 673, 875 N.W.2d 468 (2016); *Frederick v. Seeba*, 16 Neb. App. 373, 745 N.W.2d 342 (2008).

[27] *Buckingham v. Creighton University, supra* note 2.

- 635 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

the statutory scheme.[28] Thus, the purpose of § 48-125 is to provide an incentive to employers to pay the claims of injured workers in a timely manner in order to prevent additional cost to the employee accruing from litigation or late payment of fees and interest.

CMR points to the trial court's determination that CMR was the statutory employer of Martinez and in turn argues that where reasonable controversy exists between an employer and an employee as to the employer's liability, the employer is not liable for a penalty for waiting time or for allowance of attorney fees. This case, however, does not present such a controversy.

Here, the compensation court determined that no reasonable controversy existed as to CMR's status as a statutory employer or its liability as such an employer. This result is evident, because even if CMR's policy had not been canceled prior to the commencement of work in March, Texas Mutual was not authorized to operate as an insurance carrier providing workers' compensation insurance in this state and, therefore, the policy did not meet the requirements under the Nebraska Workers' Compensation Act.

Further, as we have already noted, CMR, in providing answers to Martinez' request for admissions, conceded that it "created or carried into operation a 'scheme, artifice, or device' as contemplated by Neb. Rev. Stat. §48-116" in order to avoid the requirement to maintain workers' compensation insurance.

To deny fees in such a situation would shift the cost of litigation onto the prevailing injured worker in a case involving no reasonable controversy. Such a result would frustrate the design and purpose of workers' compensation and encourage unscrupulous employers to litigate every claim for workers' compensation in an attempt to avoid their statutorily prescribed responsibility.

---

[28] *Black v. Brooks*, 285 Neb. 440, 827 N.W.2d 256 (2013).

- 636 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

CMR's assignment of error regarding attorney fees is without merit.

*Martinez' Entitlement to*
*Future Medical Care.*

CMR assigned that the compensation court erred in finding that Martinez was entitled to future medical care, but argues only that "Martinez has clearly reached maximum medical improvement from his injuries, and is able to secure and hold gainful employment; the exact same employment that Martinez held prior to his injury."[29]

We address this issue with an eye toward our standard of review in workers' compensation cases, recognizing that a judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award.[30]

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[31] However, findings of fact made by the compensation court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous.[32]

Under § 48-120(1)(a), "[t]he employer is liable for *all* reasonable medical, surgical, and hospital services . . . ." (Emphasis supplied.) The Court of Appeals has noted that before an order for future medical benefits may be entered pursuant to § 48-120(1)(a), there must be explicit evidence that

---

[29] Brief for appellant at 25-26.

[30] *Buckingham v. Creighton University, supra* note 2. See, also, § 48-185.

[31] *Hull v. Aetna Ins. Co., supra* note 3.

[32] *Id.*

- 637 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

future medical treatment is reasonably necessary to relieve the injured worker from the effects of the work-related injury.[33]

Here, the district court found that Martinez had met his burden of proof and persuasion on this issue. The court relied on Bansal's opinion, which was that Martinez will need epidural steroid injections, physical therapy, a transcutaneous electrical nerve stimulation or "TENS" unit, and an evaluation with a pain specialist for his neck. The court found that Martinez was entitled to an award of future medical care only for his neck injury. The court noted that Martinez was not entitled to future medical care for any of his other injuries, because no doctor recommended additional care for those injuries.

CMR asserts that Martinez' return to work prevents him from obtaining an award for future medical care. This assertion is incorrect: § 48-120(1)(a) provides in pertinent part that "[t]he employer is liable for *all* reasonable medical, surgical, and hospital services . . . which are required by the nature of the injury and which will relieve pain *or* promote and hasten the employee's restoration to health and employment . . . ." (Emphasis supplied.) The Legislature's use of the word "or," in the context of § 48-120, indicates that the employer is liable for reasonable medical expenses to both relieve pain and promote and hasten the restoration of health and employment.

In light of our standard of review, we find that CMR's assignment of error is without merit.

*Personal Jurisdiction*
*Over Texas Mutual.*

Finally, CMR assigns that the court erred in dismissing Texas Mutual for lack of personal jurisdiction.

An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal

[33] *Adams v. Cargill Meat Solutions*, 17 Neb. App. 708, 774 N.W.2d 761 (2009).

- 638 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

jurisdiction de novo.[34] In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.[35]

In order for the compensation court to bind Texas Mutual to its decision, the court must have personal jurisdiction. There are two types of personal jurisdiction that courts may assert over a defendant: general personal jurisdiction and specific personal jurisdiction.

[13-15] A court has general jurisdiction over a party when the party's contact with the forum is so extensive as to be continuous and systematic, such that the defendant would be "'essentially at home'" in the court's jurisdiction.[36] Specific personal jurisdiction requires that "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[37] To exercise specific jurisdiction, the plaintiff's cause of action must arise out of, or be related to, the defendant's contacts with Nebraska.[38] In regard to the activities giving rise to specific personal jurisdiction, the U.S. Supreme Court has stated that "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."[39]

As noted by the parties, the facts of this case clearly do not give rise to general jurisdiction. Therefore, our discussion turns to whether Texas Mutual purposefully availed itself of

---

[34] *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014).

[35] *Id.*

[36] *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014).

[37] *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).

[38] *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013).

[39] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

- 639 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
MARTINEZ v. CMR CONSTR. & ROOFING OF TEXAS
Cite as 302 Neb. 618

the privilege of conducting activities within this state, thus invoking the benefits and protections of its laws giving rise to specific personal jurisdiction.

CMR argues that Texas Mutual availed itself of Nebraska law when it entered into an insurance contract with a business it knew operated across state lines. CMR relies on the language contained in the liability policy under the section entitled, "Limited Reimbursement for Texas Employees Injured in Other Jurisdictions." However, the information page addressed to CMR from Texas Mutual indicates under item 3(c), entitled "Other States Insurance," the word "NONE" is clearly stated. Despite the fact that Nebraska is not mentioned anywhere in the insurance agreement or certificate, CMR proposes that because Texas Mutual contemplated that insured parties may cross state lines for work, that fact gives rise to personal jurisdiction. CMR contends that Nebraska case law is sparse with regard to minimum contacts and out-of-state insurance companies, directing our attention to three cases CMR asserts are pertinent.

First, CMR directs us to *Peay v. BellSouth Medical Assistance Plan*.[40] *Peay* involved a Georgia employer's medical assistance insurance plan and the plan's Alabama administrator, which provided benefits to one of the plaintiffs, an employee of the defendant's company, and the plaintiff's ward. The insurance company operated in nine southeastern states. The ward received care in Utah for which the insurance company refused to pay for the full cost of treatment. The plaintiff filed suit in Utah, and the insurance company countered that Utah lacked personal jurisdiction. The U.S. Court of Appeals for the 10th Circuit disagreed, holding that because the company had precertified treatment at a Utah hospital and paid for a portion of the care, it had established minimum contacts with the jurisdiction.

---

[40] *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000).

In *Nieves v. Houston Industries, Inc.*,[41] an insured employee moved to Louisiana from Texas, maintaining the insurance policy with her company following her departure from Texas. After a dispute arose, the employee filed suit in Louisiana. The court found that because several claims had already been paid by the company, personal jurisdiction had been established.

Lastly, CMR relies on *Hirsch v. Blue Cross, Blue Shield of Kansas City*.[42] In *Hirsch*, the U.S. Court of Appeals for the Ninth Circuit held that an out-of-state insurance company "purposefully availed" itself of the jurisdiction of California, based on the minimum contacts established by evidence that the insurance company had freely negotiated the enrollment agreement with the insured company, knowing that the insured company employed people nationwide.[43] CMR contends that Texas Mutual similarly knew that Menjivar and CMR operated in states outside of Texas and had agreed to insure their workers for injuries occurring in other states. We find CMR's authority for its argument wholly unpersuasive.

In *Peay v. BellSouth Medical Assistance Plan*, because the insurance company had precertified treatment at a Utah hospital and paid for a portion of the care, the 10th Circuit held that it had established minimum contacts with the jurisdiction. The same is true of *Nieves v. Houston Industries, Inc.*, wherein the court again found that several claims had already been paid by the company, giving rise to personal jurisdiction.

In this case, the record is void of any payments made by Texas Mutual to any claims arising in the State of Nebraska. Therefore, even if we were to acknowledge the persuasive authority of these federal cases, they are inapplicable to the facts of this case.

---

[41] *Nieves v. Houston Industries, Inc.*, 771 F. Supp. 159 (M.D. La. 1991).

[42] *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir. 1986).

[43] *Id*. at 1480.

Texas Mutual, however, directs our attention to *Brunkhardt v. Mountain West Farm Bureau Mut. Ins. Co.*,[44] in which we indicated that "[u]nder a personal jurisdiction analysis, the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." Additionally, when an insured travels to another state, his or her presence in the state is unilateral and does not serve to create purposeful contacts between the insurer and the state. Further, an insurance company's mere act of insuring a person who might travel to a nearby state is insufficient to find that the insurer purposely directed its activities at the forum state.

Here, Texas Mutual insured Menjivar and listed CMR as an additional insured. While the policy contains a scheme of limited coverage for injuries occurring outside of Texas, the policy and information page contain no information listing or indicating coverage in Nebraska. The record is clear that Texas Mutual does not solicit business from Nebraska, has never maintained an office in Nebraska, is not an authorized insurance company in Nebraska, is a creation of the Texas Legislature, and provides coverage for Texas claims only. Further, the policy issued to CMR lists the insured's address as "4308 Garland Dr, Haltom City, TX." The record demonstrates that according to item 3(A) of the policy, Texas is the only state to which part one of the workers' compensation insurance applies. Finally, as noted above, the record does not demonstrate that in regard to this case, Texas Mutual paid any claim originating in Nebraska.

Therefore, we affirm the decision of the compensation court in dismissing Texas Mutual for lack of jurisdiction.

## CONCLUSION

The compensation court did not err in finding that CMR was the statutory employer of Martinez and in imposing

---

[44] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins.*, 269 Neb. 222, 227, 691 N.W.2d 147, 152 (2005).

liability on CMR. Additionally, we agree with the compensation court's determination that it lacked personal jurisdiction over Texas Mutual. Under our deferential standard of review, we find that the court did not err in awarding Martinez attorney fees and future medical care, as well as determining that Martinez had sustained an 80-percent loss of earning capacity. We affirm.

Affirmed.