IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


PEREZ CARMENATE V. WAL-MART STORES


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MADALYS PEREZ CARMENATE, APPELLANT,

V.

WAL-MART STORES, INC., APPELLEE.


Filed November 8, 2022.    No. A-22-234.


Appeal from the Workers' Compensation Court: JOHN R. HOFFERT, Judge. Affirmed.

Jon Rehm, of Rehm, Bennett, Moore & Rehm, P.C., L.L.O., for appellant.

Jenna M. Christensen, of Caswell, Panko, & Westerhold, L.L.C., for appellee.


PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Madalys Perez Carmenate (Carmenate) filed a petition in the Workers' Compensation Court seeking an award of benefits for injuries that occurred during her employment with Wal-Mart Stores, Inc. (Walmart). Following trial, the compensation court awarded Carmenate temporary total disability for 21.1429 weeks and permanent partial disability (PPD) for 3.5 weeks; it also ordered Walmart to pay Carmenate's medical expenses related to the treatment of her left wrist injury. Carmenate appeals the court's award, claiming her PPD benefits should have been based on a loss of earning capacity. She also challenges the court's decision not to award her future medical expenses. We affirm.

## II. BACKGROUND

### 1. Injury and Claim

Carmenate began employment as a merchandise stocker with Walmart in May 2015. She was injured on July 23, 2020, when a box of condensed milk cans fell off a shelf. As she attempted to stop the box from falling, it hit her left wrist. She was later diagnosed with De Quervain's tenosynovitis and was found to have a partial tear of the scapholunate ligament. She eventually underwent a left first dorsal compartment release surgery in November 2020.

On April 26, 2021, Carmenate filed a petition in the compensation court seeking compensation for injuries sustained in the course of her employment with Walmart on July 23, 2020. She claimed injuries to her left arm, wrist, shoulder, and elbow. Carmenate sought temporary disability benefits, permanent disability benefits, payment of medical expenses, vocational rehabilitation benefits, waiting time penalties, attorney's fees, and interest. In its answer, Walmart admitted that Carmenate experienced an "accident" arising out of and in the course of her employment with Walmart on July 23, but denied the nature and extent of the injuries and disability alleged by Carmenate.

### 2. Trial

Trial was held on December 21, 2021. The parties had reached agreement on several issues, including that Carmenate sustained a left wrist injury arising out of and in the course of her employment on July 23, 2020. However, whether Carmenate had suffered any additional injuries from the July 2020 incident was contested. Carmenate testified with the help of an interpreter and various exhibits were received into evidence.

### (a) Left Wrist Injury

Carmenate testified that she began working for Walmart in May 2015 as a full-time merchandise stocker. She typically worked overnight shifts lifting, carrying, and opening boxes weighing about 15 to 20 pounds.

On July 23, 2020, Carmenate was placing a box of condensed milk cans on a shelf and the box fell. As she raised her arms to stop the box from striking her face, the box hit her left wrist and she felt "a lot of pain and had to hold [her] wrist." Immediately following her injury, Carmenate's supervisor took her to an urgent care center where Carmenate was prescribed Tylenol and instructed to wear a splint. The treating medical provider restricted Carmenate from lifting or carrying objects weighing more than 3 pounds for more than 8 hours per day or grasping, reaching, overhead reaching, or extending or flexing her wrist.

After the urgent care visit, Carmenate experienced worsening pain so she attended numerous appointments with medical professionals ranging in specialty, including orthopedic surgery, physical therapy, and pain management. We summarize the relevant notes from the appointments here and discuss the details of such appointments as necessary.

After the July 2020 incident, Dr. Kerri Kulovitz began treating Carmenate for her left wrist injury. In September, Dr. Kulovitz confirmed that Carmenate had developed De Quervain's tenosynovitis and further diagnosed her with a "scapholunate ligament sprain[] and mild degenerative changes of the STT joint and the first CMC joint." After various noninvasive

treatments failed to remedy her wrist injury, Carmenate underwent a left first dorsal compartment release surgery in November; one of the risks associated with the surgery was complex regional pain syndrome (CRPS). In December, Dr. Kulovitz expressed concern that Carmenate "may be developing CRPS" and recommended that Carmenate continue occupational therapy and see a pain management specialist.

Following her surgery, Carmenate attended 36 occupational therapy appointments between December 2020 and April 2021. Throughout Carmenate's time in occupational therapy, her left wrist pain significantly decreased, and she demonstrated marked improvement in her left wrist mobility and strength.

In a report authored in June 2021, Dr. Kulovitz stated that Carmenate had reached maximum medical improvement (MMI), and regarding Carmenate's left wrist, she was "safe to attempt returning to full duty at work." Dr. Kulovitz placed Carmenate at "an assigned . . . 2% impairment rating of the upper extremity, and 1% of the whole person." However, Dr. Kulovitz further stated that Carmenate had "developed diffuse chronic pain in her left upper extremity, including her shoulder and elbow" and deferred to the evaluation of Carmenate's shoulder and elbow pain by Drs. John Massey and Thomas Saylor.

(b) Injuries Beyond Carmenate's Left Wrist

As previously noted, Dr. Kulovitz was concerned that Carmenate may have developed CRPS and referred her to Drs. Massey and Saylor. In February 2021, Dr. Massey, a pain management specialist, examined Carmenate, diagnosed her with CRPS, and gave her a prescription for Lyrica. In July, Dr. Saylor, an orthopaedic surgeon, examined Carmenate's left shoulder. He noted that Carmenate's shoulder pain was "likely non organic with symptom magnification and significant compensation." Dr. Saylor recommended that Carmenate participate in physical therapy. In October, Dr. Massey "started" Carmenate on a Medrol Dosepak and stated that he would "get her scheduled for stellate ganglion block."

Carmenate began seeing Deirdre Schoenfelder, a physical therapist, in October 2021 for her left shoulder pain. At her initial appointment, Carmenate indicated that "the really strong pain [was] gone . . . in [her] hand," but that she had developed pain in her shoulder instead. She rated her pain at a 10 on a scale of 1 to 10. Throughout the course of her 10 physical therapy appointments, Carmenate continued to rate her pain at a 9 or 10 and expressed that her shoulder was not improving. Carmenate testified that physical therapy did not help at all.

In October 2021, Dr. Donato Borillo conducted an independent medical examination via a telehealth video call with Carmenate to examine her injury; no medical personnel were physically present with Carmenate during this appointment. Dr. Borillo authored a letter to Carmenate's attorney stating the following:

> In my medical opinion, Ms. Carmenate suffered several injuries to her left upper extremity on August 23, 2017 while handling boxes. She recovered and returned to work.
>
> By July 23, 2020, [Carmenate] had suffered another injury working at Walmart and on MRI, a left wrist TFCC and scapholunate ligament injury with dorsal subluxation of the ulna. [Carmenate] developed[,] as flow through conditions[,] left elbow medial epicondylitis, left wrist DeQuervain's [sic], left shoulder strain, and left wrist extensor carpi ulnaris tendinosis. She favored the wrist ailments and the neighboring joints

accommodated and became strained and inflamed. Despite surgical intervention, symptoms and clinical findings persist.

. . . .

For the left wrist, a four percent (4%) hand impairment is assigned. The DeQuervain's [sic] condition, despite surgery, impacts thumb, MP function in accordance with figure 16-5 page 457, and IP function in accordance with figure 16-12; also, abduction, figure 16-18 page 459, and opposition figure 16-19 page 460, yield a left-hand impairment of four percent (4%). Eight percent hand (8%) [sic] equates to seven percent (7%) upper extremity impairment. Left upper extremity impairment, for the injuries suffered on July 23, 2020, based upon the combined values chart found on page 604, is sixteen percent (16%) whole person impairment.

Several months earlier, on April 8, 2021, Dr. Nicholas Bruggeman conducted an in-person independent medical examination of Carmenate's neck, shoulder, elbow, forearm, hand, and wrist. Dr. Bruggeman authored a letter addressed to Walmart stating that he "[does] not believe [Carmenate] suffers from complex regional pain syndrome" and that she has reached MMI regarding her left wrist injury. He also found that "no further treatment is required. No physical therapy or diagnostic procedures are necessary." He assigned no permanent impairment rating related to Carmenate's July 2020 accident.

### 3. COMPENSATION COURT AWARD

The compensation court issued its award on March 3, 2022. The court noted that the parties had reached various stipulations, including that Carmenate sustained an injury to her left wrist on July 23, 2020; the court accepted the stipulations. The court found that "to the extent that [Carmenate] claimed other injuries[,] the medical evidence . . . lacked the needed underpinnings to support a finding favorable to [Carmenate]." The court awarded Carmenate temporary total disability for 21.1429 weeks and ordered Walmart to pay medical expenses incurred by Carmenate in the treatment of her left wrist injury. However, the court found that there was insufficient evidence to show that Carmenate required any future medical treatment for her left wrist injury and thus denied her an award of future medical expenses. The court also granted Carmenate a PPD award for 3.5 weeks for a scheduled member injury.

Carmenate appeals.

## III. ASSIGNMENTS OF ERROR

Carmenate claims restated and reordered, that the compensation court erred in (1) failing to award her PPD benefits based on a loss of earning capacity and (2) finding that she was not entitled to future medical expenses.

## IV. STANDARD OF REVIEW

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4)

the findings of fact by the compensation court do not support the order or award. *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019).

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id*. Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Id*.

As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id*.

## V. ANALYSIS

### 1. LOSS OF EARNING CAPACITY

The compensation court determined Carmenate's PPD benefits based on a loss of use of a scheduled member pursuant to Neb. Rev. Stat. § 48-121(3) (Reissue 2021) ("[f]or disability resulting from permanent injury of the following classes, compensation shall be: . . . [f]or the loss of a hand, sixty-six and two-thirds percent of daily wages during one hundred seventy-five weeks"). The compensation court accepted and adopted Dr. Kulovitz' impairment rating, entitling Carmenate to a 2 percent medical impairment to her hand. This resulted in "weekly permanent partial disability benefits of $452.76 ([average weekly wage] of $679.24 × 2/3) for a period of 3.5 weeks (statutory maximum for hand injury of 175 weeks × 2 percent medical impairment rating)."

However, Carmenate claims she should have instead been compensated for her injury based on a loss of earning capacity under a different paragraph in the same statute. Carmenate refers to language found in the third paragraph of § 48-121(3), which was added to the statute by 2007 Neb. Laws, L.B. 588. See *Rodgers v. Nebraska State Fair*, 288 Neb. 92, 846 N.W.2d 195 (2014). The third paragraph of § 48-121(3) states:

> If, in the compensation court's discretion, compensation benefits payable for a loss or loss of use of more than one member or parts of more than one member set forth in this subdivision, resulting from the same accident or illness, do not adequately compensate the employee for such loss or loss of use and such loss or loss of use results in at least a thirty percent loss of earning capacity, the compensation court shall, upon request of the employee, determine the employee's loss of earning capacity consistent with the process for such determination under subdivision (1) or (2) of this section, and in such a case the employee shall not be entitled to compensation under this subdivision.

The paragraph quoted above "provides a discretionary remedy consisting of a loss of earning capacity award in lieu of scheduled member compensation where two or more members are involved and there is a 30-percent loss of earning capacity." *Rodgers v. Nebraska State Fair*, 288 Neb. at 101, 846 N.W.2d at 202.

Carmenate claims she has been "assigned impairments to her left hand, wrist, elbow, and shoulder," and that the compensation court could have considered Carmenate's testimony "on the extent of her own disability when addressing loss of earning power and permanent disability benefits." Brief for appellant at 6. Carmenate contends that since she testified that she "would not be able to complete the jobs she had in the past because of the pain in her left wrist, elbow, and

shoulder," and "because there was no light work to accommodate her injuries," her earning power has been "greatly decreased." *Id*. at 6-7.

We first note that it is unclear from the record whether Carmenate requested that the compensation court award her PPD based on her loss of earning capacity. Regardless, the court could not have granted her a PPD award on that basis because the court expressly found that Carmenate sustained only a left wrist injury in the July 23, 2020, accident. The court further stated that there was insufficient credible medical evidence to support a finding of other injuries. Because § 48-121(3) requires the court to find "a loss or loss of use of more than one member or parts of more than one member" to award PPD on a loss of earning capacity basis and the court made no such finding, Carmenate was not eligible to receive a loss of earning capacity award.

To the extent that Carmenate impliedly challenges the compensation court's finding regarding the extent of her injuries beyond her left wrist, we cannot disturb the compensation court's factual findings if the record contains evidence to substantiate the factual conclusions reached by the compensation court. See *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Martinez v. CMR Constr. & Roofing of Texas, supra*. When the record presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court. *Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991).

The record shows that there was conflicting medical evidence presented as to the extent of Carmenate's injuries beyond her left wrist. While the compensation court found Dr. Kulovitz to be credible and relied on her expert medical opinion, Dr. Kulovitz primarily treated Carmenate's left wrist injury. In her June 2021 report, Dr. Kulovitz deferred to Drs. Massey and Saylor for opinions regarding the condition of Carmenate's shoulder and elbow. While Dr. Massey diagnosed Carmenate with CRPS affecting her left arm, Dr. Saylor found that Carmenate's shoulder pain was "likely non organic with symptom magnification and significant compensation." Drs. Borillo and Bruggeman also evaluated Carmenate and each came to a different conclusion regarding whether she had injuries beyond her left wrist. Dr. Bruggeman found that Carmenate only suffered a left wrist injury and had reached MMI; he also found that Carmenate had not developed CRPS. On the other hand, Dr. Borillo found that Carmenate suffered "several injuries" to her left upper extremity. However, the court explicitly stated that it did not find Dr. Borillo to be credible because he conducted his examination of Carmenate remotely, outside the presence of medical personnel.

As previously stated, findings of fact made by the compensation court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. See *Martinez v. CMR Constr. & Roofing of Texas, supra*. We find no clear error in the court's conclusion that Carmenate suffered an injury only to her left wrist. Accordingly, Carmenate was not eligible for a PPD award based on a loss of earning capacity.

## 2. FUTURE MEDICAL EXPENSES

Carmenate also claims the compensation court erred when it denied her request for future medical expenses. Pursuant to Neb. Rev. Stat. § 48-120(1)(a) (Reissue 2021), "[t]he employer is liable for all reasonable medical, surgical, and hospital services . . . which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration

to health and employment[.]" Before an order for future medical benefits may be entered, there should be a stipulation of the parties or evidence in the record to support a determination that future medical treatment will be reasonably necessary to relieve the injured worker from the effects of the work-related injury or occupational disease. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). Whether medical expenses are reasonably necessary and related to the work-related injury is a question of fact to be determined by the trial judge. *Visoso v. Cargill Meat Solutions*, 18 Neb. App. 202, 778 N.W.2d 504 (2009).

Finding no stipulation between the parties regarding an award of future medical benefits, the compensation court reviewed the medical evidence to determine whether it was probable that Carmenate would need future medical care in relation to her left wrist injury. The court stated that "neither Drs. Kulovitz [nor] Bruggeman[,] who the Court relied upon in determining the nature and extent of [Carmenate's] injury[,] has recommended any future medical care for the wrist injury." Accordingly, the court concluded that it was not probable that Carmenate would need future medical care for her left wrist.

Carmenate argues that her future need for medical care was demonstrated by the fact that "Dr. Kulovitz referred [her] to Dr. Saylor and Dr. Massey for future pain management relating to CPRS." Brief for appellant at 5. She further points out Dr. Massey's recommendation of a "stellate ganglion block and a Medrol Dosepak" and Dr. Saylor's recommendation that she have an MRI and continued physical therapy. *Id.*

Carmenate's argument refers exclusively to evidence aimed at demonstrating future medical needs related to injuries beyond her left wrist. However, as previously addressed, the compensation court did not find that Carmenate suffered any injuries beyond her left wrist injury as a result of the July 2020 accident. Any future medical expenses unrelated to Carmenate's left wrist injury are not relevant to the court's denial of an award of future medical expenses. Thus, there was no error in the court's decision declining to award future medical expenses.

## VI. CONCLUSION

For the reasons set forth above, we affirm the compensation court's March 3, 2022, award.

AFFIRMED.