DONAVON J. SCHMIDT, APPELLANT, V. CITY OF CROFTON AND EMPLOYERS MUTUAL COMPANIES, APPELLEES.

468 N.W.2d 625

Filed May 3, 1991.   No. 90-1003.

Kathleen Koenig Rockey and Matthew J. Carney, of Domina & Copple, P.C., for appellant.

Walter E. Zink II and David A. Dudley, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff, Donavon J. Schmidt, appeals from an order of dismissal entered by the Nebraska Workers' Compensation Court on rehearing, with one judge dissenting, in an action against the City of Crofton and Employers Mutual Companies, the city's insurance carrier. Plaintiff timely appealed to this court. Plaintiff's three assignments of error may be summarized as one: The Workers' Compensation Court on rehearing erred in finding that plaintiff had failed to prove causation of his disability by a reasonable degree of medical certainty. We affirm.

The well-settled standard of review in workers' compensation cases is that findings of fact made by the compensation court on rehearing have the same force and effect as a jury verdict and will not be set aside unless clearly wrong. *Neneman v. Falstaff Brewing Corp.*, 237 Neb. 421, 466 N.W.2d 97 (1991). In a review of the record for clear error, the evidence must be viewed in the light most favorable to the successful party. *Id.*

The record, considered in the light most favorable to the defendants, shows that at the time of his accident, plaintiff, a 48-year-old male, had worked for the City of Crofton as a maintenance worker for approximately 15 years. While so employed on May 23, 1989, plaintiff was injured installing a 200-pound diving board at the city pool. Plaintiff stood underneath the diving board and used his head and right arm, along with the force of his legs, to push the board upward into place so that another employee could position the board on its rubber mounts. As he was lifting the board into place, plaintiff testified, he "felt kind of funny," as if he had just had a bowel movement, and that he was exhausted and lightheaded. He experienced rectal bleeding and called his wife to take him home. The next thing he remembers is being transported to the hospital in Yankton, South Dakota.

At Sacred Heart Hospital in Yankton, plaintiff was treated by Dr. Robert J. Neumayr, an internist. Plaintiff gave a brief medical history, including his treatment for anemia approximately a month prior to the lifting incident. In addition to the blood loss from plaintiff's lower gastrointestinal tract, Neumayr noted a general "change in sensorium" in that "[h]e wasn't the usual Donavon Schmidt. He wasn't sharp. He gave vague answers." Plaintiff testified that he felt dizzy and off balance. In response to these symptoms, plaintiff underwent several tests, including a CT scan on the day of the accident and an MRI scan approximately a week later. The CT scan indicated that plaintiff had suffered a left basilar ganglia lacunar infarct, a type of stroke in which part of the brain is damaged, and the MRI confirmed it. However, the MRI was unclear as to when this lacunar infarct was sustained. The radiologist characterized it as an "old" injury which, according to Neumayr, means the injury did not occur on the day the test was done, but it could have occurred a day, a week, or a month prior to the test. Nonetheless, Neumayr testified that the strain of heavy lifting directly caused plaintiff's subcortical brain hemorrhage, or lacunar infarct, and his consequent behavioral problems.

On Neumayr's recommendation, plaintiff was examined by several physicians, including a rheumatologist, a neurologist, and a psychiatrist. Plaintiff was also examined by several psychologists. Neumayr first referred plaintiff to Dr. William R. Palmer, a rheumatologist in Omaha, to determine whether plaintiff was suffering from some type of rheumatologic, or connective tissue, disease which would manifest itself in plaintiff's change in personality. Palmer first examined plaintiff on June 22, 1989, and found the examination to be "completely normal except for his very flat affect and . . . a moderate amount of depression." Palmer was not certain that plaintiff suffered from a rheumatologic disorder and withheld his recommendation pending further test results. On July 21, 1989, after evaluating the test results, Palmer could not "identify a connective tissue disease as a cause of [plaintiff's] problems" and remained "at a loss to explain [plaintiff's] current mental and physical status."

Dr. Ronald A. Cooper, a board-certified neurologist, first examined plaintiff on June 22, 1989, at the request of Neumayr. Cooper testified in his deposition, taken June 12, 1990, that he could not determine the cause of plaintiff's personality disorder, but that it was not the lacunar infarct. Cooper agreed with Neumayr that plaintiff had indeed suffered a lacunar infarct at some time, but specifically did not agree that it was the cause of plaintiff's personality disorder. Cooper stated that a lacunar infarct is a small stroke in the brain, "usually less than a sonometer (sic) in size," or about half an inch, and that he did not feel that a small stroke at the deep center of the brain would cause plaintiff's problems. He testified that a subcortical hemorrhage would not cause the type of problems plaintiff was experiencing unless it was "very large and causing compression of the brain itself" and that unless the lacunar infarcts are multiple and affect both sides of the brain, they generally do not cause problems with personality and memory function. He also stated that a single lacunar infarct, "if it's in the right area, can cause a weakness, a stroke-like picture, but it . . . should not cause problems with cognitive function with thinking. . . . The cortex of the brain usually has to be involved with a single stroke to cause those type[s] of changes."

In a letter to defendant Employers Mutual, dated October 27, 1989, Cooper stated, "I do not feel that the small lacunar infarct noted in the left basal ganglia has anything to do with the patient's symptomatology and is probably an incidental finding." Cooper concluded that there was no relationship between the lifting incident and plaintiff's personality disorder.

On referral from Cooper, plaintiff was evaluated at Bishop Clarkson Memorial Hospital by Dr. Bruce D. Gutnik, a psychiatrist, on June 23, 1989. Gutnik noted in his report to Cooper that during this evaluation, plaintiff "denie[d] any sadness or depression, and denie[d] any personality change" since the accident. Gutnik also noted that a "computerized axial tomography and MRI of [plaintiff's] brain showed an old lacunar infarct in the left basal ganglia with probably no clinical significance." Neumayr's diagnosis was eventually supported by Gutnik, who later concluded, after examining the results of plaintiff's neurological testing, that plaintiff's diminished

long-term memory for new material, his impaired capacity to perform motor encoding tasks, and his slow right-hand reflex capability indicated an atypical subcortical organic dysfunction such as can be seen following small subcortical brain hemorrhages.

The compensation court on rehearing reviewed all of the testimony, and two judges of the court concluded that the evidence "preponderate[d] in the defendants' favor as to the question of causation," relying heavily on Cooper's testimony. The court dismissed plaintiff's petition.

We are precluded from substituting our view of the facts for that of the Workers' Compensation Court if the factual conclusions reached by that court are substantiated by the record. *Neneman v. Falstaff Brewing Corp.*, 237 Neb. 421, 466 N.W.2d 97 (1991); *Rosemann v. County of Sarpy*, 237 Neb. 252, 466 N.W.2d 59 (1991). The central issue in this case concerns causation, a matter ordinarily for the trier of fact. *Binkerd v. Central Transportation Co.*, 236 Neb. 350, 461 N.W.2d 87 (1990).

The record in the present case contains conflicting medical testimony as to causation. Plaintiff's original treating physician, Neumayr, an internist not board-certified in his field, concluded that the manner in which plaintiff lifted a diving board while installing it at work caused a lacunar infarct in plaintiff's brain and that the lacunar infarct, or subcortical brain hemorrhage, in turn caused plaintiff's personality disorder. Neumayr's conclusions were based on plaintiff's CT scan and MRI test. Other doctors agreed, in varying degrees, with Neumayr's conclusions.

Cooper's opinion was completely at odds with Neumayr's opinion. Cooper defined a subcortical hemorrhage as a "hemorrhage under the cortex of the brain." While Cooper had no explanation for plaintiff's personality disorder, he did not "find any definite evidence" in plaintiff of a subcortical organic dysfunction or a subcortical organic hemorrhage of a size which would cause the type of personality changes plaintiff was experiencing. He stated that plaintiff's lacunar infarct was a small isolated infarct located in an area of the brain not responsible for personality functions and that neither the

lacunar infarct nor the lifting incident had any relation to plaintiff's personality problems. Cooper based his opinion on plaintiff's medical history, examinations, and tests.

The trier of fact must weigh the evidence and resolve any contradiction in conflicting testimony from expert witnesses. *Kidd v. Winchell's Donut House*, 237 Neb. 176, 465 N.W.2d 442 (1991). Even contradictory testimony from the same expert witness which produces a good faith conflict of opinion is a matter to be resolved by the fact finder. *Id.; Vredeveld v. Gelco Express*, 222 Neb. 363, 383 N.W.2d 780 (1986).

Although the medical testimony conflicts, based on our review of the record we cannot say the compensation court erred in finding that plaintiff failed to meet his burden of proof as to causation and in dismissing plaintiff's petition. Therefore, the judgment of that court is affirmed.

AFFIRMED.