LUANN M. LIBERTY, APPELLANT, V. COLONIAL ACRES NURSING HOME AND FIDELITY & CASUALTY COMPANY OF NEW YORK, APPELLEES.

481 N.W.2d 189

Filed March 6, 1992. No. S-91-622.

Rod Rehm, P.C., for appellant.

Dallas D. Jones, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Citing insufficient evidence as its reason, the Nebraska Workers' Compensation Court, upon rehearing, dismissed Luann M. Liberty's claim for workers' compensation benefits, and she appeals. We affirm the majority ruling of the three-judge panel.

In deciding this case, we need discuss only the first of appellant's five assignments of error: that the compensation court "erred in finding the plaintiff failed to sustain her burden of proof in connection with the causal relationship between her accident on January 1, 1989 and her current disability."

This court has long held that a claimant has the burden to prove by a preponderance of the evidence that the claimant's employment proximately caused an injury which resulted in disability compensable under the Workers' Compensation Act. See *Phipps v. Milton G. Waldbaum & Co.*, 239 Neb. 700, 477 N.W.2d 919 (1991). The issue of causation of an injury or disability is one for determination by the trier of fact, whose findings will not be set aside unless clearly wrong. *Castro v. Gillette Group, Inc.*, 239 Neb. 895, 479 N.W.2d 460 (1992).

We have also held that in a workers' compensation case

involving a preexisting condition, the claimant must prove by a preponderance of the evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability. *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991).

Findings of fact by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside on appeal unless clearly wrong. In testing the sufficiency of the evidence to support findings of fact made by the court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992).

On January 1, 1988, Liberty, then 30 years of age, began working as a nursing attendant at the Colonial Acres Nursing Home in Humboldt, Nebraska. In a review of the evidence in the light most favorable to the appellees, the record reveals the following: About January 1, 1989, Liberty injured her back. She claims her injury occurred when the bed to which she was transferring a patient from his wheelchair rolled. She testified that the rolling bed caused her to support all of the patient's weight until she could get the patient back into his wheelchair. Liberty claims she suffered a sharp pain in her lower back. She sought medical attention on January 2, 1989, from Dr. Stephen Stripe of Humboldt. Liberty was off work for 10 days and received workers' compensation for temporary partial disability.

There is conflicting evidence as to whether Liberty suffered back and leg pain between the time she returned to work in January and mid-October 1989. The appellant and two of her coworkers testified that Liberty continually complained of back and leg pain after returning to work in January 1989. However, Liberty made no complaint to her doctors of any such pain during the January to mid-October period. Appellant's

supervisor testified that during that period Liberty did not complain of back or hip pain, nor did she lose worktime on account of any such pain. There is a conflict in the evidence regarding whether Liberty recalled telling her employer about any back pain between the time she returned to work in January and mid-October 1989.

On November 2, 1989, Liberty visited Dr. Stripe and complained she had had pain in her hip, back, and left buttock for about 2 weeks. Liberty denied she was involved in any accident or trauma, and she gave no indication that the pain of which she was complaining was related to the injury that occurred the previous January. Dr. Stripe prescribed crutches for Liberty and referred her to Dr. Dennis Bozarth, a Lincoln orthopedic surgeon. Dr. Bozarth noted that in addition to complaining of pain in her hip, back, and left buttock, Liberty also complained of occasional numbness and tingling on the top of her left foot. Appellant told Bozarth that she had not hurt herself or done anything unusual which would have caused the pain. On her way to see Dr. Bozarth on November 2, 1989, Liberty stopped at the nursing home and told her supervisor that she would be off work for a time.

Conservative treatment ordered by Dr. Bozarth failed to provide relief to Liberty. On November 27, 1989, a CAT scan revealed that Liberty suffered from a spinal defect, a grade II spondylolisthesis with a compression of the thecal sac at level L4-5. Spondylolisthesis is a naturally progressing problem which can lead to nerve root compression and may be a congenital condition. It can also result in radiculopathy, a disease of the nerve roots. Dorland's Illustrated Medical Dictionary 1109 (26th ed. 1981).

At the end of November 1989, Dr. Bozarth prescribed a back brace for Liberty in an attempt to relieve nerve irritation in the affected areas. Liberty eventually required two surgeries, which were performed in June 1990 by Dr. Daniel Ripa of Lincoln, a specialist in spine surgery. The first surgery consisted of a bilateral complete laminectomy at L4 and a posterolateral spinal fusion from L4-5. The second surgery consisted of an anterior fusion of L4-5. When he released Liberty to return to work on January 21, 1991, Dr. Ripa recommended that Liberty

not lift more than 35 pounds on a repetitive basis and that she not engage in prolonged repetitive bending, twisting, or stooping. These recommendations were to be permanent restrictions.

It is undisputed that in the winter of 1989-90 Liberty slipped on ice and fell on the driveway at her home. The evidence is in conflict as to the point in time the fall occurred. Liberty claims the fall occurred sometime after she started wearing a back brace in December 1989. Two of Liberty's coworkers corroborated this claim. However, two of Liberty's supervisors and two of her other coworkers contradicted Liberty's claim that she fell on the ice after the end of November 1989. All of appellees' witnesses testified that Liberty told them on November 2, 1989, that she had hurt herself when she slipped and fell on ice. They further testified that these conversations occurred on November 2, 1989, when Liberty, while using crutches, stopped by the nursing home on her way to see Dr. Bozarth for the first time.

Dr. Bozarth, when asked whether he could state with reasonable medical probability that the injury Liberty suffered in January 1989 either caused or aggravated her spondylolisthesis, answered that the type of work nurse's aides perform, lifting and bending, *probably* exacerbated her spondylolisthesis condition. He never answered whether Liberty's accident in early January 1989 caused or exacerbated her condition. Thus, a fact finder could conclude that Dr. Bozarth's testimony does not support a finding that the condition for which Liberty seeks compensation was causally related to her accident on or about January 1, 1989, as Liberty contends.

In response to a boilerplate-type written questionnaire entitled "Medical Report — Luann Liberty," Dr. Ripa diagnosed Liberty's condition to be "spondylolysis L-4 with grade 3 spondylolisthesis of L-4 on L-5 causing lumbar nerve root irritation." Dr. Ripa placed an X in the "yes" column opposite paragraph No. 2, which stated: "The condition diagnosed above was caused or aggravated by a work injury at Colonial Acres Nursing Home on *February 12, 1989*." (Emphasis supplied.) One of Dr. Ripa's surgical reports

indicates that Liberty was injured in February 1989. No specific date in February is listed. In her testimony before the three-judge panel, Liberty claimed she had been uncertain as to the date the bed rolled at the nursing home. A written accident report completed January 6, 1989, by the nursing home, which was filed with the Workers' Compensation Court, states that the accident occurred on January 1, 1989. Dr. Stripe's records reflect that he attended Liberty on January 2, 1989, for the injury she received in that incident. It is understandable that a fact finder might give little or no weight to the one-word opinion of Dr. Ripa as to the causation of Liberty's injuries. An expert opinion that consists of an X on a questionnaire that details no factual basis for the opinion or the expert's reasoning behind the opinion may explain the lack of credibility or weight the compensation court apparently attributed to Dr. Ripa's opinion as to the cause of Liberty's injuries. The value of an opinion of an expert is no stronger than the facts upon which it is based. *Riha v. St. Mary's Church & School, Inc.*, 209 Neb. 539, 308 N.W.2d 734 (1981). The Workers' Compensation Court, as the trier of fact, is the sole judge of the credibility of witnesses and weight to be given testimony. *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991). In any event, triers of fact are not required to take an expert's opinion as binding upon them. See *Keystone Ranch Co. v. Central Neb. Pub. Power & Irr. Dist.*, 237 Neb. 188, 465 N.W.2d 472 (1991).

Dr. Alan H. Fruin, a member of the Creighton University School of Medicine, examined Liberty at the request of the employer's counsel. After reviewing the facts of the rolling bed incident in January 1989 and Liberty's medical records, Dr. Fruin reported that in his opinion Liberty suffered an acute lumbar strain as a result of the rolling bed incident, "which she completely recovered from and [she] was able to return to work without pain." He stated that Liberty's symptoms and difficulties that developed in October 1989 were the result of the natural progression of her spondylolisthesis and not the result of the back strain that she suffered in January 1989.

Thus, there was conflicting medical testimony as to the cause of the injury upon which Liberty attempts to collect workers' compensation. As our cases require, the conflicting expert

testimony was weighed and resolved by the trier of fact. See *Schmidt v. City of Crofton*, 238 Neb. 49, 468 N.W.2d 625 (1991).

The Workers' Compensation Court, the trier of fact herein, concluded that there was insufficient evidence to prove a compensable causal relation between Liberty's work and the condition for which she was treated. After reviewing the record, we cannot say that the compensation court was clearly wrong.

AFFIRMED.