IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


SERNA V. ADVANCE SERVICES


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MARIA RONQUILLO SERNA, APPELLANT,

V.

ADVANCE SERVICES INC., APPELLEE.


Filed May 24, 2022.    No. A-21-811.


Appeal from the Workers' Compensation Court: JOHN R. HOFFERT, Judge. Affirmed.

Jon Rehm and Jena C. Mahin, Senior Certified Law Student, of Rehm, Bennett, Moore & Rehm, for appellant.

William J. Birkel and DJ Rison, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee.


PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Maria Ronquillo Serna filed a petition in the Workers' Compensation Court seeking an award of benefits for an injury that occurred during the course of her employment with Advance Services Inc. Following trial, the compensation court awarded Serna temporary total disability benefits for 2.4286 weeks and ordered Advance Services to pay certain medical expenses incurred by Serna in the treatment of her injury. Serna appeals the compensation court's award, claiming errors by the court in receiving certain exhibits into evidence; calculating her temporary total disability benefits; and finding her not entitled to permanent disability benefits, future medical expenses, or vocational rehabilitation. We affirm.

## II. BACKGROUND

### 1. FEBRUARY 2020 INJURY

Serna began working for Advance Services in November 2019. Her job was to assemble connectors in train cars, which required her to measure and cut certain cables and wires and connect them to specific terminals in the train cars. This work required that she reach overhead and lift and carry objects, including the tools required for the work.

Serna's injury occurred on February 28, 2020, while performing her employment duties. As Serna stood at the top of a ladder on a train car measuring and cutting cables, her coworker, who was training her, "wanted [her] to go get some . . . other parts quickly." Climbing down the ladder steps, Serna "bumped . . . against a little cart . . . behind her" that held various tools. After bumping the cart, she "tried to go to the left side," but tripped on a box, fell on her knees, and landed on her back on the left side. She kept working "sitting down" after the fall, as she felt the level of pain was what would typically be expected after a fall. Serna's supervisor was notified of the fall immediately after it occurred.

Serna continued experiencing significant pain in her knees and lower back, and the on-site doctor retained by Advance Services examined Serna the following day. Serna was prescribed medication to relieve her symptoms. On March 3, 2020, Serna sought an examination at an external health clinic, reporting back pain, left leg pain, and bilateral knee pain. X rays of her knees and lower back indicated degenerative disease in Serna's left and right knees, a questionable "loose body" in the right knee, and "[e]ndplate degenerative changes without evidence of malalignment" in her lower back. She was instructed to use crutches when walking and prescribed medication to help with the pain.

Following a referral provided by her primary care provider, Serna was examined at an orthopedic clinic by Dr. Keith Lawson and Laura Wegehaupt, PA-C, on March 11, 2020. According to reports, the x rays were negative for any dislocations or fractures but "significant" for "degenerative changes," including "nearly bone-on-bone joint space narrowing" in various locations in her knees. Dr. Lawson provided Serna with a doctor's note stating that she may return to work on March 23 with no limitations. Serna began physical therapy on March 16, although she later reported that she was still experiencing symptoms of significant pain despite completing 27 sessions of physical therapy by May 27.

Following a referral by Advance Services after Serna filed a petition in the Workers' Compensation Court on April 16, 2020, Dr. Michael Morrison examined Serna on May 28. Dr. Morrison reported that the previous x rays indicated "severe degenerative arthritis of both knees with bone on bone erosion, right greater than left," and "some minimal degenerative disc disease" in her lumbar spine. He believed that the accident on February 28 resulted in a "temporary aggravation of a rather severe arthritic knee condition" and "lumbar strain."

Serna's primary care provider subsequently referred her for an MRI of her right knee on June 23, 2020. Documentation related to this MRI reported the following impressions: "[m]oderate to severe tricompartmental knee osteoarthritis"; "[c]omplex tear of the medial meniscus" and torn posterior horn; "[m]ild tendinosis"; "[s]mall knee effusion"; and "[i]ntra-articular bodies" within certain areas of the knee.

Following the MRI, Serna was referred by her primary care provider to Dr. Daniel Ripa for further examination on July 9, 2020. After his examination of Serna and review of the MRI, Dr. Ripa observed "moderate to severe tricompartmental osteoarthritis, greatest at the medial femorotibial compartment and a complex tear of the medial meniscus including posterior horn tear and a mild knee effusion" in the right knee. (Emphasis omitted.) With respect to Serna's lower back condition, Dr. Ripa reported "[m]ild degenerative change" in her lumbar spine. Dr. Ripa made similar observations at followup examinations on July 13 and 17, and Serna disclosed feeling a "clicking" in her right knee.

Dr. Ripa subsequently administered a steroid injection to Serna's right knee. Serna reported that this injection provided some amount of temporary relief, and Dr. Ripa recommended an "arthroscopy of the right knee and resection of the torn medial meniscus as well as debridement of the joint" to potentially relieve her symptoms. The operation took place on August 21, 2020, although Serna's symptoms did not improve following the arthroscopy. After a postoperative appointment on September 8, Dr. Ripa provided a note for Serna to return to work in 4 weeks, noting that she would need a "sit down job" with no standing, climbing, squatting, or crawling.

Serna subsequently underwent surgery to totally replace her right knee on November 23, 2020, in order to address her "end-stage medial compartment osteoarthritis." No complications were reported, and Serna began physical therapy following the surgery. She reported improvements to her symptoms over multiple follow-up examinations after her knee replacement surgery.

## 2. TRIAL

Trial was held on July 28, 2021. Serna testified with the assistance of an interpreter, and a representative for Advance Services also testified. Neither Dr. Morrison nor Dr. Ripa testified in person, but their diagnoses and opinions, as well as other corresponding medical reports, were received as exhibits. We note at the outset that the parties stipulated to Serna's injury occurring during the course of her employment with Advance Services on February 28, 2020, and that timely notice of that injury was given to Advance Services. The "nature and extent" of Serna's injury remained in dispute.

### (a) Serna's Testimony

In addition to her testimony concerning medical care received after her fall on February 28, 2020, Serna testified to her prior medical history and her present capacity to work in light of her condition. She recalled that she had seen a chiropractor for knee and back pain before the fall, and she subsequently sought an "orthopedic insole" for her right leg, which was "a little bit shorter" than her left. She stated that her knee was "fine" before the February 28 accident and described that by the time of trial, her knee felt "okay" when she was "sitting or standing for a little bit." However, she could not "move [her right knee] towards the back" or otherwise fully extend her right leg. She also described that carrying heavy objects caused pain in her right knee. Serna believed that she could not perform her job with Advance Services because she "would have to carry heavy things" and "have to be standing and sitting" "very low" to the ground. She similarly believed she could not work her previous jobs with other businesses, as they also required carrying

heavy objects and prolonged standing. Prior to trial, Serna enrolled in community college English courses in order to "get a job in [her] field of study or a job where [she could] sit comfortably."

### (b) Serna's Medical History

Medical records for Serna's condition prior to February 28, 2020, were received at trial. Exhibit 34 documented care received by Serna beginning in December 2017. According to exhibit 34, Serna presented to a hospital complaining of severe pain in her right knee. X rays revealed "severe patellofemoral and medial compartment narrowing with near bone-on-bone contact in the medial compartment" along with "possible intra-articular loose bodies." According to the reviewing radiologist's impressions, the x rays indicated "[a]dvanced right knee osteoarthritis without acute osseous abnormality."

Similarly, exhibit 33 documents chiropractic care received by Serna from October 29, 2018, through January 3, 2019. According to the "Initial Evaluation," Serna presented with pain in her right shoulder, right knee, left foot, right foot, and neck. With respect to Serna's right knee, the evaluation described that "[i]nternal and external rotation of the right knee caus[ed] a 'clicking,' possibly indicating a meniscus tear." Exhibit 33 indicates that Serna self-reported gradual improvements to her right knee over time, although she did not report that the pain completely abated.

### (c) Medical Records of Unrelated Individual

Exhibits 30 and 38 were offered by Advance Services at trial. These exhibits, containing reports dated from 2015 through 2020, document chiropractic care for lower back and knee pain received by an individual whose identifying information, including name, date of birth, and social security number, did not match Serna's. These records also describe that this individual experienced a fall in 2019 resulting in injury to her right knee. As we set forth below, it is apparent from the record that Dr. Morrison and Dr. Ripa reviewed these exhibits in evaluating Serna's condition. Serna objected to the receipt of these exhibits, and the compensation court reserved its ruling pending the production of further evidence from Advance Services.

### (d) Expert Reports and Opinions

#### (i) Dr. Morrison

In his report dated May 28, 2020, Dr. Morrison concluded that Serna's right knee condition resulted from preexisting osteoarthritis that was "temporarily aggravated by her fall," and "[a]ny further treatment for her knee condition would have no relationship to the fall [on February 28] based on the severity of the arthritis." He advised that Serna had no permanent impairment as a result of the fall, and if she was "unable to return to work as was recommended by Dr. Lawson [by March 23], her inability to return to work [was due to] the severity of her arthritic knee condition" rather than the February 28 incident.

According to Dr. Morrison's reports, Serna also disclosed a prior history regarding her lower back in that she was involved in a car accident 4 to 5 years ago and saw a local chiropractor for treatment of lower back pain stemming from that accident. The record indicates that Dr. Morrison reviewed either exhibit 30 or exhibit 38, or possibly both, and drafted a supplemental report concluding that Serna's lower back pain also resulted from the "temporary aggravation" of

a preexisting condition. Dr. Morrison further determined that Serna would have returned to her baseline after approximately 4 to 6 weeks after the fall on February 28, 2020, and any further treatment after that period would relate to her preexisting symptomatic condition.

### (ii) Dr. Ripa

According to Dr. Ripa's medical reports, Serna stated that prior to February 28, 2020, she did not have any significant right knee pain or limitation. Conversely, his review of the x rays of Serna's right knee "indicated significant degenerative change," and the MRI evidenced osteoarthritis as well as a "significant complex tear of the meniscus." Dr. Ripa further noted:

> If indeed [Serna] indicates truthfully that she was not having dramatic trouble in her right knee prior to the February injury, there might be some value in trying to scope her knee and remove debris and the torn meniscus. She certainly however has no medial cartilage and is headed for total joint replacement at some point. Certainly some of the degenerative change [was] preexistent to the February injury.

A "Workers' Compensation Medical Report" signed by Dr. Ripa and dated June 22, 2021, set forth his opinions regarding Serna's post-knee replacement condition. The report is in the form of a questionnaire with a combination of handwritten and "check the box" responses. In the report, Dr. Ripa diagnosed Serna as having a "[b]ulging . . . L4-L5 [spinal] disc" with the symptoms greater on the left side than the right and a "torn medial meniscus" in her right knee. Dr. Ripa indicated that he believed the February 28, 2020, incident "[c]ombine[d] with other non-work related factors to bring about" Serna's lower back and right knee conditions. He noted that future medical care would consist of an "X-ray in 5-7 years" for her right knee. Dr. Ripa assigned a permanent impairment rating of 37 percent for Serna's right knee as well as restrictions against jumping, impact activities, and prolonged kneeling or squatting. Dr. Ripa assigned an impairment rating of 0 percent for Serna's lower back with no restrictions. He further affirmed that he was aware that Serna had "sought chiropractic care for her back pain in 2018 and 2019 and described a fall on her right knee in 2019." We note that the described chiropractic care and fall align with those facts set forth in exhibit 30 regarding the care received by an individual unrelated to this case.

### 3. WORKERS' COMPENSATION COURT AWARD

The compensation court issued its award on September 2, 2021. The court first addressed the admissibility of exhibits 30 and 38. The court found that the "individual identified in Exhibit 30 and Exhibit 38 was not, in fact, [Serna]," noting that the "date of birth and social security number of the individual referenced" were not the same as Serna's. Although these exhibits did not pertain to Serna's condition and treatment history, the court overruled Serna's objection and received these exhibits "for the very limited purpose of evaluating the persuasiveness of a causation opinion offered by Dr. Daniel R. Ripa and the value of a supplemental report authored by Dr. Michael Morrison."

The compensation court next addressed the "nature and extent of any injuries suffered" by Serna in the accident on February 28, 2020. Noting that the parties' respective experts addressed only Serna's lower back and right knee conditions, the court found that there was a "lack of any

persuasive opinion on either causation or extent of injury concerning [Serna's] alleged injuries to her left knee, hip, and left leg." (Emphasis omitted.) The compensation court thus limited the scope of its award to Serna's right knee and lower back conditions.

Regarding Serna's right knee condition, the compensation court first observed that "there can be no serious doubt nor believable denial of the fact that [Serna] had a preexisting problem in that joint." In particular, the court emphasized that exhibits 33 and 34 described symptoms of osteoarthritis and a "meniscus tear" in Serna's right knee, including "clicking" and difficulty walking due to severe pain, that were reported as early as October 2018. Due to Dr. Ripa's substantially similar findings concerning Serna's right knee in July 2020, the court concluded it was evident that "this anatomical anomaly had not resolved itself in the intervening year-and-a-half."

Upon review of the evidence presented, the compensation court expressly found Serna's testimony and Dr. Ripa's medical opinion to not be credible in evaluating the nature of Serna's right knee condition. Of substantial concern for the court was "the lack of corroboration" between Serna's testimony and her chiropractic and medical treatment history as set forth in exhibits 33 and 34. The court also noted that "[n]o history of [Serna's] preexisting degenerative disease nor her prior bouts with severe knee pain and past difficulty walking were noted in the record" outside of exhibits 33 and 34. With respect to Dr. Ripa, the court observed an "expression or hint of doubt" in his impressions of Serna's condition based on her representation of "no dramatic pre-accident problems in the knee." The court also described that the "'check-the-box' and/or 'fill-in-the-blank' questionnaire" completed by Dr. Ripa consisted of questions that were "deficient or otherwise lacking in completeness" without any "reference whatsoever [to Serna's] well-documented treatment for and history of preexisting right knee problems," instead referring to the fall and chiropractic treatment described in exhibit 30. The court thus rejected Dr. Ripa's opinion regarding the nature and extent of Serna's injury based on her "lack of candor . . . with her medical care providers and the Court," the "clear evidence of a preexisting" osteoarthritis condition, and "the frailty of Dr. Ripa's causation opinion." The court concluded that Dr. Morrison's opinion regarding Serna's right knee was the "only persuasive medical opinion" presented and consequently found that Serna "suffered a temporary aggravation of her preexisting severe arthritic condition in her right knee."

With respect to Serna's lower back, the compensation court determined that both Dr. Ripa's opinion and Dr. Morrison's supplemental report were "tainted" by each expert's apparent reliance on the "erroneous information" contained in exhibits 30 and 38. With this uncertain evidentiary backdrop, the court rejected Dr. Ripa's opinion and Dr. Morrison's supplemental report, finding Dr. Morrison's May 28, 2020, assessment that Serna suffered a lumbar strain in the fall to be the most credible opinion offered. "To the extent that [Dr. Morrison's opinions] were able to be reconciled with the evidence," the court determined that it "could not reasonably conclude that [Serna] suffered any definable period of temporary disability associated with the low back strain."

Limiting its consideration for disability benefits to Serna's right knee condition, the compensation court found Dr. Morrison's May 28, 2020, report to be the most credible. The court held that Serna's period of temporary total disability ended on March 22, which entitled her to 2.4286 weeks of temporary total disability benefits at the rate of $433.52 per week (based on an average weekly wage of $650.28). Because it found Serna's right knee condition after the accident

was a "temporary aggravation" of her preexisting osteoarthritis, the court further found that she was not entitled to permanent disability benefits, future medical benefits, or vocational rehabilitation. The court limited Advance Service's responsibility for Serna's medical expenses to those incurred in treating her knee injury from February 28, 2020, until her release to full duty without restrictions effective March 23. The court also awarded Advance Services a credit for certain payments made.

Serna appeals.

## III. ASSIGNMENTS OF ERROR

Serna claims that the compensation court "was clearly wrong as a matter of fact in finding that there was no medical causation, [Serna] was not entitled to [temporary total disability] benefits extending passed [sic] March 22, 2020, compensation of future medical expenses, permanent disability benefits, and vocational rehabilitation."

## IV. STANDARD OF REVIEW

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019).

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.* Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Id.*

As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.*

## V. ANALYSIS

### 1. EXHIBITS 30 AND 38

As a preliminary matter, Serna argues, but did not assign as error, that the compensation court erred in admitting exhibits 30 and 38 into evidence. Absent plain error, errors argued but not assigned will not be considered on appeal. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). We accordingly limit our analysis of this issue to a plain error review. Plain error exists where error, plainly evident from the record, prejudicially affects a substantial right of a litigant and is of such nature that if left uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of judicial process. See *Tyler F. v. Sara P.*, 306 Neb. 397, 945 N.W.2d 502 (2020).

We initially note that the Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence. See *Fentress v. Westin, Inc.*, 304 Neb. 619, 935 N.W.2d 911 (2019). See, also, Neb. Rev. Stat. § 48-168(1) (Reissue 2021). Rather, the compensation court may, except as otherwise provided in the Nebraska Workers' Compensation Act, "make the investigation in such manner as in its judgment is best calculated to ascertain the

substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act." See § 48-168(1).

Serna claims that the compensation court erred in admitting exhibits 30 and 38 into evidence. Although she acknowledges that the court "characterized its admission [for] the 'limited' purpose of assessing the credibility" of Dr. Ripa and Dr. Morrison, she argues that because these exhibits do not contain her medical records, consideration of exhibits 30 and 38 "unduly prejudiced" her and led the compensation court to find in favor of Advance Services. Brief for appellant at 7. However, the record does not support her concern.

As set forth previously, the compensation court admitted exhibits 30 and 38 for the "very limited purpose of evaluating the persuasiveness" of Dr. Ripa's opinion and Dr. Morrison's supplemental report. Exhibits 30 and 38 were thereafter referenced by the court in its findings, noting that each party's expert witness relied on those exhibits to some extent. The court consequently discredited both witnesses to the extent that the court determined the witnesses' opinions were "tainted" by such reliance. As pointed out by Advance Services, the "[e]xhibits are of probative value because if a medical opinion is based on the underlying facts offered in the [e]xhibits, an opinion based upon them would be of little to no probative value." Brief for appellee at 29. Since Dr. Ripa and Dr. Morrison both considered the medical reports contained in exhibits 30 and 38 to some extent in formulating their opinions, the compensation court appropriately analyzed the impact those exhibits may have had on the doctors' opinions. Accordingly, the court's admission of exhibits 30 and 38 for its stated limited purpose did not constitute plain error.

## 2. TEMPORARY DISABILITY BENEFITS

Serna claims that the compensation court erred in awarding only 2.4286 weeks of temporary total disability benefits. She argues that the court "failed to give sufficient weight to Dr. Ripa's opinions" that the accident "accelerated" her preexisting osteoarthritis in her right knee and "resulted in a compensable injury requiring surgery." Brief for appellant at 8.

If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1992). When the record presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court. *Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991).

While Serna is correct that Nebraska law has "consistently recognized that the lighting up or acceleration of preexisting conditions by accident is compensable," see *Riggs v. Gooch Milling & Elevator Co.*, 173 Neb. 70, 74, 112 N.W.2d 531, 534 (1961), her argument on appeal solely contests the weight given by the compensation court to the conclusions of each party's respective expert witness concerning whether Serna's right knee condition after March 22, 2020, was attributable to the February 28 fall. As observed by the compensation court, Serna's medical records following the February 28 accident, including the records and ultimate opinion of her primary expert, Dr. Ripa, do not indicate that she disclosed her prior diagnoses for osteoarthritis or a torn meniscus in her right knee. We also note, as described above, that Dr. Ripa appeared to

question Serna's representation that she did not have prior issues with her right knee. Further, Dr. Ripa's final postoperative opinion came in the form of a "'check-the-box' and/or 'fill-in-the-blank' questionnaire" that contained little context underlying the questions posed or the answers provided by Dr. Ripa, and we find the form of Dr. Ripa's ultimate opinion to be a reasonable consideration in the compensation court's credibility findings. See *Liberty v. Colonial Acres Nsg. Home*, 240 Neb. 189, 481 N.W.2d 189 (1992) (expert opinion consisting of marks or one word answers on questionnaire detailing no factual basis for opinion or reasoning behind opinion may explain discounting of expert opinion's credibility by the compensation court).

Given this record, as well as our deference to the compensation court's role as fact finder, see *Leitz v. Roberts Dairy, supra*, we cannot say that the court was clearly wrong in finding credible Dr. Morrison's opinion that Serna had reached maximum medical improvement and was able to return to work without restrictions by March 23, 2020. Accordingly, we find the record sufficiently supports the court's conclusion that Serna was not entitled to temporary total disability benefits beyond March 22.

### 3. RELIEF DENIED BY COMPENSATION COURT

In her assignments of error section, Serna claims that the compensation court erred in finding that she was not entitled to future medical expenses, permanent disability benefits, and vocational rehabilitation for the injury to her right knee. Of these allegations, Serna only argues in the body of her brief that the court erred in finding that she was not entitled to vocational rehabilitation. Accordingly, we review the court's findings regarding permanent partial disability benefits and future medical expenses for plain error. See *Salem Grain Co. v. Consolidated Grain & Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017) (in absence of plain error, appellate court considers only claimed errors which are both assigned and discussed).

### (a) Permanent Disability Benefits

As set forth previously, the compensation court accepted "Dr. Morrison's opinion that [Serna] suffered but a temporary aggravation of her preexisting and severe osteoarthritic knee condition" and concluded that "no award of permanency can be attributed to the subject accident." Dr. Morrison stated in his May 28, 2020, report that Serna suffered "no permanent impairment as a result of the fall" on February 28 after "reach[ing] maximum medical improvement regarding her knees." While we have reviewed Serna's testimony regarding her experienced symptoms and limitations following the February 28 fall, as well as Dr. Ripa's reports detailing her condition and treatment, the court expressly found the evidence presented by Serna to not be credible. Given the conflicting evidence in this case and the court's assessment of the witnesses' credibility, we find no plain error in its conclusion that Serna was not entitled to permanent disability benefits.

### (b) Future Medical Expenses

Pursuant to Neb. Rev. Stat. § 48-120(1)(a) (Reissue 2021), "[t]he employer is liable for all reasonable medical, surgical, and hospital services . . . which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment[.]" Before an order for future medical benefits may be entered, there should be a stipulation of the parties or evidence in the record to support a determination that future medical

treatment will be reasonably necessary to relieve the injured worker from the effects of the work-related injury or occupational disease. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016).

As set forth previously, the compensation court determined Advance Systems to be responsible solely for Serna's medical expenses incurred from February 28, 2020, until March 23, and concluded that its adoption of Dr. Morrison's opinion regarding the extent and nature of Serna's right knee injury "necessarily foreclose[d]" any award of future medical benefits. Given that this matter also concerns the court's credibility findings, we defer to its role as fact finder. See *Liberty v. Colonial Acres Nsg. Home, supra* (compensation court, as trier of fact, is sole judge of witness credibility and weight to be given to their testimony; trier of fact is not required to take expert's opinion as binding). Accordingly, we find no plain error in the court's award concerning this matter.

### (c) Vocational Rehabilitation

Serna claims that the compensation court erred in not granting vocational rehabilitation as part of its award. She argues that she "depended on her mobility and physicality to maintain a job" and "has not been able to find a suitable position" since the accident. Brief for appellant at 9. She identifies that Dr. Ripa assigned a 37 percent impairment rating with accompanying restrictions after she had reached maximum medical improvement, and Advance Services was "unable to place [her] in a position that would accommodate her restrictions." *Id.* Serna asserts that vocational rehabilitation is necessary for her to find suitable work in light of her injury.

Concerning an injured worker's entitlement to vocational rehabilitation benefits, the Nebraska Supreme Court has stated:

> Without a finding of permanent medical impairment, there can be no permanent restrictions. Without impairment or restrictions, there can be no disability or labor market access loss. Absent permanent impairment or restrictions, the worker is fully able to return to any employment for which he or she was fitted before the accident, including occupations held before the injuries occurred. . . . [I]f one is able to return to work, he or she is not entitled to vocational rehabilitation.

*Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 206, 639 N.W.2d 94, 103 (2002).

As described previously, Dr. Morrison concluded that Serna suffered "no permanent impairment as a result of the fall" in February 2020 and could return to work without restrictions by March 23, 2020. Upon consideration of the evidence, the compensation court found Dr. Morrison to be persuasive and accordingly adopted his conclusions into the award. Dr. Ripa's assignment of a 37 percent impairment rating with restrictions is not binding on the court, as it is the court's province to make determinations of weight and credibility. See *Liberty v. Colonial Acres Nsg. Home, supra*. As we previously described, the court expressly found Dr. Ripa's opinion and Serna's testimony to not be credible. Given the evidence in the record that Serna's impairment was not attributable to her injury and the court's conclusion that she was not entitled to an "award of permanency," we find that the court was not clearly wrong in determining that she was not entitled to vocational rehabilitation.

## VI. CONCLUSION

For the reasons set forth above, we affirm the award of the compensation court.

AFFIRMED.